**FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CLAUDIA CHALDEN,** | |
| Plaintiff, | |
| | Case No. 10 C 1963 |
| v. | |
| **KENNETH L. SALAZAR, Secretary of the Department of the Interior, Agency,** | Hon. Harry D. Leinenweber |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion by Defendant Kenneth L. Salazar, Secretary of the Department of the Interior (hereinafter, "the DOI") for summary judgment on Plaintiff Claudia Chalden's ("Chalden") two-count complaint alleging disability discrimination and age discrimination. For the reasons stated herein, the motion is granted.

### I. BACKGROUND

Chalden is a former employee of the National Park Service, U.S. Department of the Interior, who worked as a dispatch supervisor at the Indiana Dunes National Lakeshore Communications Center until November 2008. She contends that she was disabled due to depression and that the DOI failed to accommodate this

disability. She also contends that she experienced disparate treatment due to her disability. The Court notes that in her response to the DOI's Motion for Summary Judgment, Chalden abandoned her age discrimination claims, and seeks only to pursue those claims based on her alleged disability. The DOI argues that Chalden failed to exhaust her administrative remedies as to her failure to accommodate claim, so it is not properly before this Court. The DOI also argues that Chalden cannot show that she is disabled or was regarded as disabled by her superiors, she never requested a reasonable accommodation, and she cannot show that similarly situated employees were treated better than she was treated.

### A. Motion to Strike

Preliminarily, Chalden moves to strike large portions of Defendant's Local Rule 56.1 Statement of Facts and the fact section of Defendant's Memorandum in Support of its Motion for Summary Judgment. Chalden argues that numerous exhibits attached to Defendant's Statement of Facts are "unidentified, uncertified, lack foundation, are not supported by affidavit, and are inadmissible hearsay."

A party moving for summary judgment must support its factual positions by "citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). When a party seeking summary judgment offers evidence through exhibits other than depositions, answers to interrogatories, admissions or affidavits, the party must support those exhibits by affidavit or otherwise show how they could constitute admissible evidence. *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985).

Chalden has contested the entry of numerous exhibits. In its response, the DOI withdrew several exhibits as either inadmissible or unnecessary, and the Court will not consider those documents. As to the remainder of the documents, the DOI argues most are admissible either as business records or as party admissions. The Court agrees, and notes that motions to strike are "disfavored and infrequently granted." *Black v. Long Term Disability Ins.*, 373 F.Supp.2d 897, 904 (E.D. Wis. 2005). The Court further notes that Chalden's objections are largely technical in nature and she does not seriously dispute the authenticity of the documents presented by the DOI. As such, the Court will consider the remainder of the challenged documents, and Plaintiff's Motion to Strike is denied.

**B. Facts**

The following facts are taken from the parties' Local Rule 56.1 statements, deposition testimony, and exhibits. Chalden began working for DOI in 1979, first in Seattle, and then, beginning in 1995, at Indiana Dunes National Lakeshore, a year-round federal park. The park is staffed by rangers, including law enforcement personnel, a fire team, and dispatchers in the communications center who provide information to the rangers.

Chalden was transferred to Indiana Dunes as a dispatcher, but moved around the organization before eventually becoming dispatch supervisor. In 2004, Mike Bremer ("Bremer") became the Chief Ranger, making him Chalden's first-line supervisor. Her second-line supervisor was Superintendent Gary Traynham ("Traynham"), and her third-line supervisor was Superintendent Constantine Dillon ("Dillon"). During her employment, Chalden worked for three to four years as an Equal Employment Opportunity ("EEO") counselor.

In March 2008, Chalden was away from work for several weeks because she was suffering from shingles. Around that time, Chalden's doctor, Dr. Hassan Ibrahim, sent a letter to Dillon indicating that Chalden was suffering from depression and anxiety, as well as a number of other disorders, including asthma, chronic lower back pain, chronic fatigue, and diabetes. Dr. Ibrahim wrote

that "[p]utting [Chalden] under increased and constant mental and psychological stress as perpetuated by her hostile work environment over the past three year *[sic]* as per my patient information, which I do trust, will definitely worsen her medical condition, will increase the chance for her to have a stroke or heart attack or even death." Dr. Ibrahim concluded by saying that he would appreciate steps being taken to alleviate Chalden's stress in order to minimize her complications.

While Chalden was off work due to shingles, Bremer assigned a relatively new dispatcher, Becca Kanter ("Kanter"), to write a set of instructions for reporting case incidents. When Chalden returned to work, she was furious that an inexperienced dispatcher had been assigned this task, and confronted Bremer. Chalden felt that having a newer employee drafting policy was humiliating to her and her more experienced employees, and accused Bremer of using Kanter to harass and intimidate her. During this incident, Chalden was so angry she was shaking, and in her own account of the incident, she said she raised her voice "as well as I could without giving myself a coughing fit/asthma attack." Chalden told Bremer that his constant harassment was "killing" her. After speaking with Bremer, Plaintiff went to Traynham's office, where she cried uncontrollably for 15 to 20 minutes.

Because of this incident, Bremer suspended Chalden for three days. During the meeting discussing her suspension, Bremer told Chalden he was not the cause of her diabetes, and she replied that he was. Their confrontation became heated, and Chalden then went to Dillon's office. Dillon recommended that she seek help through the agency's EEO office, but Chalden replied, "I don't think it has anything to do with any Title VII categories." Subsequently, Chalden provided the agency with a note from her psychiatrist explaining that the abrupt stopping and starting of her medication may have led to her behavioral problems.

On April 29, 2008, Bremer gave Chalden her mid-year performance review, rating her as successful in most tasks but unsatisfactory in "general supervision." She was informed that she would be put on a performance improvement plan to bring her supervisory rating up to an acceptable level. On May 1, 2008, Chalden gave Bremer a written rebuttal to her performance review in which she said that she could not accept Bremer's appraisal as anything other than a sign of his prejudice against her "and as a symbolic vise from which you hope to squeeze more emotional outbursts or poor judgments so I can wrap up my NPS [National Park Service] career secure in the knowledge that I have no value."

Chalden's performance improvement plan was to run from June 19, 2008 through August 18, 2008. She had 60 days to develop and submit a draft dispatcher manual containing standard operating procedures and instructions related to dispatcher duties, with a minimum of twenty-six topics. She had seven days to submit a list of training topics. Under the terms of the plan, Chalden could be fired if she failed to perform acceptably. Chalden was unable to complete the tasks assigned by the plan. She contends that Bremer rejected her efforts without providing her with any guidance, which Bremer disputes.

At any rate, on September 22, 2008, Bremer gave Chalden a memorandum explaining that she had not met the requirements of the performance improvement plan. Then, on October 21, 2008, Bremer gave Chalden a notice of proposed removal. That same day, Chalden was reassigned to the Division of Interpretation and Visitor Services, at the same pay and benefits, pending a final decision on her termination. A dispatcher named Cathy Sanchez was selected to fill Chalden's position as dispatcher supervisor.

Chalden contends that when she received notice of the proposed termination, she spoke with Traynham and told him that the terms of the performance improvement plan were impossible to meet and that some of the tasks she was assigned were not within her job

description. Chalden contends she also told Traynham that her health had deteriorated under Bremer's supervision and his actions were "killing her." Traynham, she contends, responded by telling that was not his problem. Traynham denies making that comment.

Chalden then sent a memorandum to Traynham asking for an extension of time to discuss the proposed removal and consider her options for retirement. But on November 7, 2008, Traynham sustained the proposed removal. The same date, Chalden sent Traynham a memorandum requesting early retirement because, "I can no longer endure working for a demeaning, sadistic, Neo-Fascist supervisor, who can't seem to tell the difference between military and civilian service." Chalden's retirement became effective on November 28, 2008. Chalden maintains that she was constructively fired because she did not choose to retire, but was forced into it.

Early in 2009, Chalden contacted an EEO counselor. When there was no informal resolution, Chalden filed a formal EEO charge alleging discrimination based on age and mental disability, which she identified as temporary clinical depression. In her EEO complaint, Chalden wrote that her problems with Bremer had been constant since he became her supervisor, "causing severe health problems, broken teeth from grinding, & the necessity for antidepressants." She alleged that Bremer disrespected her in

- 8 -

front of others and encouraged "antagonism and insubordination." Chalden acknowledged that her work had "generally been found unsatisfactory," but she attributed this to poor direction from Bremer. Chalden's complaint also detailed her problems with Kanter and recounted how she had been put on the performance improvement plan following her confrontation with Bremer. Chalden alleged she was pushed out of the way in favor of Kanter, and asked that she be reinstated for six months so she could take her full retirement.

Chalden's EEO charge was based on six incidents: (1) her termination; (2) being deprived of work assignments that were reassigned to Kanter; (3) being ridiculed about her disability of depression by co-workers; (4) the assignment of a performance improvement plan; (5) her reassignment to the Division of Interpretation and Visitor Services; and (6) being escorted out of the building by an armed ranger when she was fired. Her EEO complaint was investigated from May through July 2009. The DOI reached a formal agency decision in September 2009 finding that Chalden was not subjected to discrimination or harassment based on disability.

## II. **LEGAL STANDARD**

Summary judgment is appropriate where the record shows that there is no genuine dispute as to an issue of material fact. FED.

R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on summary judgment, the Court does not weigh the evidence or determine the truth of the matter, but determines whether a genuine issue of material fact exists that warrants trial. *Id.* at 249. In addressing a motion for summary judgment, the court must review the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). However, a genuine issue of fact is not shown by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest on mere allegations, but must present specific facts showing that a genuine issue exists for

trial. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984).

### III. **ANALYSIS**

Chalden brings failure to accommodate and disparate treatment disability discrimination claims under the Rehabilitation Act, 29 U.S.C. § 791. Like the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12112(a), the Rehabilitation Act, which applies to federal employers, prohibits discrimination "against a qualified individual with a disability because of that disability." *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (internal citations omitted). The Rehabilitation Act applies the same standards as the ADA. *King v. City of Madison*, 550 F.3d 598, 600 (7th Cir. 2008).

Chalden argues that she suffered a mental disability in the form of depression, and that the letter from Dr. Ibrahim amounted to a request for an accommodation, which the DOI failed to provide. Chalden also argues that she was subject to disparate treatment because of her disability when she was first transferred, and then terminated, for failure to complete the performance improvement plan.

To establish a claim for failure to accommodate, Chalden must show: (1) that she is a qualified individual with a disability; (2) Defendant was aware of her disability; and (3) Defendant failed

to reasonably accommodate her. *Ekstrand v. Sch. Dist. of Somerset,* 583 F.3d 972, 975 (7th Cir. 2009). To establish a claim for disparate treatment under the indirect method, which is what Chalden seeks to do, Chalden must establish that she is: (1) a qualified individual with a disability; (2) she was meeting the DOI's legitimate expectations; (3) she was subject to an adverse employment action; and (4) the circumstances suggest that her disability was the reason for the adverse action. *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1127-28 (7th Cir. 2006). The final prong may be met by showing that similarly situated non-disabled employees were treated more favorably. *Id.* at 1128. If the plaintiff can establish these elements, the burden then shifts to the employer to give a legitimate, non-discriminatory reason for its actions. *Id.* If it can do so, the employee must demonstrate that the reason offered is a pretext for discrimination. *Id.*

### A. Scope of Chalden's EEO charge

Initially, the DOI asserts that Chalden's claim of failure to accommodate is barred because her formal EEO charge did not allege such a claim. Typically, an employee can only bring discrimination claims that were part of the complainant's EEO charge. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This rule is meant to afford the employer with notice as to

alleged wrongs and to encourage settlement of the dispute prior to formal court proceedings. *Id.* However, because most discrimination charges are completed by laypersons, a claimant need not allege in her EEO charge every fact that forms the basis of her complaint. *Id.* However, the claims set forth in a complaint must be "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (internal citations omitted). What this means is that there must be a factual relationship between the claims in the EEOC charge and the complaint, and they must "at minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* at 501.

Here, Chalden did not assert a claim of failure to accommodate in her EEO charge. Rather, she claimed age discrimination and discrimination based temporary clinical depression. She did not allege that her supervisors failed to provide her with a reasonable accommodation.

Under Seventh Circuit precedent, "a claim for failure to accommodate is separate and distinct . . . from one for disparate treatment because of a disability." *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 897-98. In *Green*, the plaintiff alleged in her complaint that she had been denied certain accommodations, including a suitable desk chair and dimmer lighter for her

- 13 -

sensitive eyes. *Id.* at 898. She did not include any of these allegations in her EEOC charge. *Id.* As such, the court found that her failure to accommodate claim was barred. *Id.* In so ruling, the Court held that failure to accommodate and disparate treatment claims are "not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability." *Id.*

Here, Chalden's only argument as to how she exhausted her failure to accommodate claim is that she checked the box for mental disability discrimination on her EEO charge, and her accommodation claim is related to this discrimination charge. This is not enough to show a reasonable relationship between the two. Further, Chalden's EEO complaint focused primarily on her conflict with Kanter and Bremer. At one point, she wrote that when Traynham told her he was upholding her termination, he said that because her environment was causing her problems, "we've got to get you out of here." Chalden then alleged that she "reminded him that Title VII requires that the environment be mitigated." This oblique reference to an accommodation was not enough to put the DOI on notice of a failure to accommodate claim. This is particularly true where Chalden received a letter from the EEO program manager

detailing what claims had been accepted from her EEO charge, and wrote a response clarifying her claims, but still did not mention a lack of accommodation. Likewise, Chalden did not mention the alleged lack of an accommodation in her sworn testimony to the EEO investigator.

### B. Disabled Individual

Further, even if Chalden could show a reasonable relationship between her EEO charge and claim of failure to accommodate, that claim is doomed because Chalden cannot produce sufficient evidence to show that she is a disabled individual. This is a requirement not only for her to establish a failure to accommodate, but also for her claim of disparate treatment.

The Rehabilitation Act follows the same definition of "disabled" as the ADA. *Stein v. Ashcroft*, 284 F.3d 721, 725 n.2 (7th Cir. 2002). The ADA defines a disability as (1) a physical or mental impairment that substantially limits one or more of the claimant's major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. *Stein*, 284 F.3d at 724-25.

Depression can be a disability, but only if it substantially limits a major life activity. *Ogborn v. United Food and Commercial Workers Union*, 305 F.3d 763, 767 (7th Cir. 2002). Here, Chalden testified during the EEO proceedings that she suffered temporary depression affected by stress, but it did not impair her regular life activities. Specifically, Chalden testified, "[u]nless the situation becomes extremely grave, the circumstances surrounding my everyday life, or in this case, my work life, unless it escalates a great deal, the antidepressants are fine." Chalden further testified that even when she suffered depression and was not on medication, it did not affect her ability to perform manual tasks, walk, see, hear, speak, breathe, learn, or work.

In opposition to the DOI's Motion for Summary Judgment, Chalden submitted an affidavit stating that she was first diagnosed with depression at 28 years old. A few months after she began working at Indiana Dunes, she began feeling hopeless, anxious, and forgetful. When Bremer became her supervisor, her dosage of antidepressants increased because she could no longer get out of bed in the morning or focus well on tasks. Around that time, Chalden contends, she became increasingly forgetful. By the time of her performance improvement plan, Chalden said she was so forgetful, anxious, and fatigued that she made mistakes she

otherwise would not have made.  Chalden makes no attempt to reconcile her affidavit describing debilitating depression with her sworn testimony during the EEO proceedings.

The DOI contends Chalden's affidavit should be disregarded because it contradicts her earlier sworn testimony, and the Court agrees.  Chalden conceded in her EEO testimony that her temporary depression did not prevent her from working or affect any other major life activities.  She cannot create an issue of fact by submitting an affidavit now stating otherwise.  *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2002); *see Russell v. Acme-Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995) (holding that when a deposition and affidavit are in conflict, the affidavit should be disregarded unless the testimony in question was mistaken or there is a plausible explanation for the variance).

Further, Chalden has not presented evidence that her supervisors regarded her as disabled.  Chalden testified that both Traynham and Bremer were aware she suffered depression because they saw the letter from Dr. Ibrahim, but she never discussed her diagnosis with them.  Additionally, Bremer admittedly knew Chalden had health problems, and she had told him that she had stress-related issues, including sleeplessness.  When an EEO investigator asked Bremer if he observed Chalden as being limited in her major

life activities, Bremer replied that the way Chalden interacted with others in the workplace was a problem, "and whether that is reflective of her medical conditions, I am not a doctor and can't say." Bremer added, however, that she was able to perform the basic functions of her job. The only time he recalled her being impaired in the workplace because of her health problems was when she suffered severe lower back pain and he told her to take sick leave rather than work while in pain.

It is not enough for Chalden to show that her supervisors may have known that she suffered from depression. *Amadio*, 238 F.3d at 925. Rather, Chalden must present evidence that her employer believed her major life activities were substantially limited by her impairment. *Id.* Chalden has not done so here. At best, Bremer's testimony reflects that he may have thought that her interpersonal difficulties stemmed in part from her mental impairments. This falls well short of what Chalden is required to show, which is that her employer considered her to be substantially limited in her ability to do her job. *Krocka v. City of Chicago*, 203 F.3d 507, 514 (7th Cir. 2000).

Further, even if Chalden could show that she was disabled, her disparate treatment claim is proceeding under the indirect method, which additionally requires her to show "it was more likely than

not that [her] disability was the reason" for her employer's adverse action. *Timmons*, 469 F.3d at 1126. As noted above, Chalden could do this by showing that a similarly situated non-disabled employee was treated better than she, but the only similarly situated employee that Chalden identifies is Cathy Sanchez, who replaced her as dispatch supervisor. Chalden provides no evidence as to how Sanchez was similarly situated to her in terms of job performance, qualifications, or conduct. *Radue v. Kimberly-Clark Corp.*, (7th Cir. 2000). In particular, there is no evidence that Sanchez had confrontations with her supervisors in the same manner that Chalden did, but was not disciplined.

Nor can Chalden show that the circumstances surrounding her transfer or termination indicate that it is more likely that not that she was fired because of her alleged disability. Rather, the record indicates that Chalden had numerous job deficiencies that provide support for the DOI's actions in this case. While Chalden argues that an impossible-to-meet performance improvement plan was put in place as a pretext to fire her, the Court disagrees that the plan was impossible to achieve for an employee of Chalden's experience and position. Because Chalden cannot establish a *prima facie* case of disability discrimination, her claims must fail, and the DOI is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Strike Certain Facts and Exhibits to Defendant's Local Rule 56.1(a)(3) Statement of Facts and a Portion of its Memorandum in Support of its Motion for Summary Judgment is denied. Defendant's Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 6/27/2011